## BAGLEY vs. EATON, Adm.

*Fourth Judicial District Court, August,* 1857.

LOST INSTRUMENT—AFFIDAVITS.

Affidavits, offered to prove the loss of an instrument, are admissible to lay the founda-
tion for secondary evidence, but are not allowed to prove the instrument itself. If
they go beyond the proof of the loss and attempt to explain the contract, they
are so far inadmissible.

Where promissory notes were given to the maker by the payee, and destroyed by the
maker with the payee's consent, the payee should conclusively show that the notes
were not paid.

This was an action to recover $14,000, balance alleged to be due on
three promissory notes made on the 22d March, 1851, by Grove C.
McMickle, and payable to Bagley & Sinton. The notes were to bear
interest at five per cent. per month; and were afterwards assigned by
Sinton to Bagley.

Plaintiffs introduced and read in evidence the two following affidavits,
to show the destruction of the notes, and to lay the foundation for
proving their contents by secondary evidence.

*David T. Bagley,* the plaintiff in the above entitled action, being
duly sworn, says: On the 22d day of March, A. D., 1851, Grove C.
McMickle made and delivered to the firm of Bagley & Sinton three
promissory notes of that date, described and referred to in a certain
instrument in writing of that date, signed by this plaintiff and R. H.
Sinton and Grove C. McMickle, and acknowledged before J. P. Haven,
Notary Public; that said notes remained in the possession of said
Bagley & Sinton for some time after their maturity, and in the demand
for the same said Bagley & Sinton had been very lenient and indul-
gent to said McMickle, and had resorted to no legal proceedings to
collect the same; and that said McMickle had repeatedly requested
said firm not to sell or negotiate said notes, and fearing a negotiation
to some person who might be more rigorous in the collection of the
same, the parties all together, viz; said Bagley, Sinton and McMickle,
consented and agreed that said notes, for the sole purpose of prevent-
ing their negotiation into the hands of some other party, or of their
getting into the market, might be destroyed, and believing also that
the rights of the parties would remain the same as before the destruc-

tion ; and the said notes were then and there, to wit : about the 15th day of August, A. D., 1852, torn up into small pieces and thrown away in the presence of all the parties. That said destruction was done for, the purpose aforesaid, and by the agreement of the parties was not to affect the right of the said Bagley & Sinton to recover on said notes, and with full intent on the part of all the parties that the rights of the parties should be as if the notes had continued to exist.

*Richard H. Sinton,* being duly sworn, deposes and says : That on the 22d day of March, A. D., 1851, Grove C. McMickle made and delivered to the firm of Bagley & Sinton (then composed of the plaintiff and this affiant,) three promissory notes of that date, being the same referred to and described in a certain instrument of writing of that date, executed in duplicate by said Bagley and McMickle and this affiant under their respective hands and seals, and acknowledged by them respectively before J. P. Haven, a Notary Public, on the same day. That said notes remained in the possession of said Bagley & Sinton for some time after their maturity, and that, in the demand for the same, said Bagley & Sinton had been very lenient and indulgent to said McMickle, and had resorted to no legal proceedings to collect the same, and that said McMickle repeatedly urged said firm not to sell or negotiate the said notes, as he feared a negotiation to some person who might be more rigorous in the collection, and believing he had a claim for indulgence on said firm, and having a great objection to his paper being hawked about in the market,—the parties altogether, to satisfy said McMickle, and to prevent a negotiation of said notes into the hands of some other parties or their getting into the market, consented that the same might be torn up or destroyed ; and, according to the best recollection and belief of this affiant, the same were torn up into small pieces about the 15th day of August, A. D., 1851, and thrown away, in the presence and by the consent of said Bagley & Sinton and said McMickle, but with the distinct understanding on the part of all, that the claim of said Bagley & Sinton on said notes against said McMickle should remain exactly as if said notes still existed, and that said Bagley & Sinton consented to the same only to satisfy said McMickle as aforesaid, and with a full belief on their part that their claim on said notes was not affected thereby, and that the evidence of the same contained in said instruments of the date of 22d March, 1851,

would fully prove the same, and be all that would be necessary to enforce their collection.

Plaintiff then introduced an agreement or bond entered into between McMickle and Bagley & Sinton, dated March 22, 1852, showing the circumstances under which the notes were given. It appeared by this instrument that McMickle during his life time agreed to purchase from Bagley & Sinton, and they agreed to sell him, a lot at the northeast corner of Kearny and Pacific streets, for $14,000. Deceased paid on account of said purchase $8420. On the 22d of March, 1851, the date of the bonds, it was ascertained that the amount due Bagley & Sinton was $6580, for which sum the notes now in controversy were given. The bond contained the following condition to which the notes and purchase are subject: " That if the said McMickle shall well and truly pay to the said Bagley & Sinton, or their assignees, the said notes at maturity, then the said Bagley & Sinton agree and hereby bind themselves to execute to the said McMickle a quit-claim deed of all their right, title and interest in and to the aforementioned lot of ground. But if the said McMickle shall make default in the payment of any one or all of the said notes, then the said McMickle is to forfeit all right in the said lot of ground, and the said Bagley & Sinton are hereby authorized to make such disposition thereof, discharged of all claim or pretence of claim or interest in the same on the part of said McMickle, as they may see fit."

The plaintiff then rested, and defendant's counsel expressed their readiness to go to the jury on the case as it then stood.

*Hoge & Wilson*, for plaintiff.

*Glassell & Leigh*, for defendant.

HAGER, J.—The bond is sufficient evidence of the making of the notes therein described. The affidavits of plaintiff and Sinton are addressed to the court for the purpose of accounting for the non-production of the notes sued upon, and laying the foundation for secondary evidence, and are not evidence for the jury. These affidavits show that the maker of the notes peaceably acquired their possession and destroyed them with plaintiff's consent. Under these circumstances, I feel it my duty to instruct you that there is no testimony to

Bagley *vs.* Eaton, Adm.

show that there is any amount due upon the notes sued upon. This is the third trial of this case, but it is the first time it has come up in this form; heretofore Sinton was introduced by plaintiffs as a witness, and explained the delivering of the notes to the maker.

I can only regard the affidavits as in evidence to satisfy the court the notes cannot be produced upon this trial, and to authorize secondary proof of their contents; but as they trace the notes to the possession of their maker, and disclose that they were destroyed by him with plaintiff's consent, it raises no presumption that they were unpaid in whole or in part; but on the contrary, regarding the affidavits only as proving the destruction in the manner disclosed—by the maker with the consent of the owners—it raises an opposite presumption in favor of the former, which plaintiff is bound to explain by additional evidence. The affidavits themselves contain an explanation, but in this respect they go beyond their true purpose. Defendants had no opportunity to cross-examine the affiants, and this court cannot give any greater force and effect to the affidavits than was asked for them when they were introduced, and there is no proof to rebut the presumption in favor of the deceased maker of the notes.

If plaintiff can recover upon the testimony as it now stands, then any person who pays a note, takes it up and destroys it, may be compelled to pay it a second time if he is not prepared to defend by proof of actual payment. Merely taking up his note and destroying it would be no protection, if the then holder could, as the plaintiff here has attempted to do, compel him afterwards, by bringing suit and making affidavit as in this case, to show an actual payment. To establish such a principle of law, would not only be dangerous, but also be taking away what has been regarded as the best and most ordinary protection and safeguard that a party has when he makes payment of obligations of this kind.

The jury found in favor of the defendants.